**EASTERN AIR LINES, INC.,**
Petitioner,

v.

**FEDERAL AVIATION ADMINISTRATION,**
Respondent.

**EASTERN AIR LINES, INC.,**
Petitioner,

v.

**FEDERAL AVIATION ADMINISTRATION,**
Respondent,

**Midway Airlines, Intervenor.**

Nos. 84–5790, 84–5927.

United States Court of Appeals, Eleventh Circuit.

Oct. 7, 1985.

---

Charles L. Schlumberger, U.S. Dept. of Justice, Civ. Div., Kenneth N. Weinstein, U.S. Dept. of Transp., Richard M. Lorr, Washington, D.C., for FAA.

Mary Kogut-Equels, Richard P. Magurno, Miami, Fla., for Eastern.

Joel S. Burton, James Hamilton, Charles L. Schlumberger, U.S. Dept. of Justice, Kenneth N. Weinstein, U.S. Dept. of Transp., Washington, D.C., for intervenor-Midway Airlines.

Before JOHNSON and HENDERSON, Circuit Judges, and ALLGOOD,* District Judge.

JOHNSON, Circuit Judge:

This is a consolidated action in which Eastern Air Lines challenges two orders by the Federal Aviation Administration (FAA): (1) the agency's July 1984 refusal to authorize the purchase by Eastern of certain Air Florida take-off and landing "slots" at LaGuardia and National Airports; and (2) its September 1984 approval of the transfer of these same slots to Midway Airlines as purchaser of and successor to the bankrupt Air Florida carrier. This Court has jurisdiction to review a final order of the FAA pursuant to § 1006(a) of the Federal Aviation Act, 49 U.S.C.A. § 1486(a). We AFFIRM both orders of the FAA.

---

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

## I. Facts and Proceedings Below.

For several years, the FAA has been responsible for allocating "slots" at major U.S. airports. A slot is a kind of reservation for landing and departure. At high density airports, slots are scarce and, hence, quite valuable. When Air Florida filed for Chapter 11 bankruptcy in 1984, Eastern Air Lines offered some $3.5 million for the Air Florida slots at LaGuardia and National Airports. Air Florida accepted the offer, subject to FAA approval, but the agreement ran afoul of a long-standing FAA policy against slot sales (changes in this policy have been proposed, but never implemented). The FAA administrator refused to approve the sale, writing in a letter of July 24, 1984, that

> [t]he FAA's policy, which has been clearly stated, is that the sale of slots is not permitted.... Accordingly, your request for FAA approval of the sale of Air Florida's slots at Washington National and LaGuardia to Eastern Airlines is denied.

When Eastern and Air Florida subsequently applied for a temporary slot transfer, the result was the same. The FAA administrator wrote:

> The FAA's policy concerning sales of slots, as set forth in my letter to you of July 24, 1984, has not changed. That policy is that sales of slots are not permitted. Your proposed agreement is clearly a sale.... Accordingly, your request ... is denied.

These decisions are the subject of the first petition for review filed by Eastern, No. 84–5790.

After the Eastern/Air Florida slot sale was invalidated, Midway Airlines began to negotiate to acquire Air Florida as a going concern. Midway wrote the FAA to ask whether it could use the Air Florida slots under its proposal to purchase Air Florida. The FAA administrator replied on September 12, 1984:

> Before Midway is allowed to use Air Florida's slots for its own operations ... I will have to determine that either of two conditions have been satisfied: (1) Midway must have acquired Air Florida pursuant to a court-approved plan of reorganization, or (2) have in place a court-approved and binding agreement to purchase the company guaranteed by a letter of credit for a substantial percentage of the purchase price which must be exercisable within a reasonable period. Under either condition, I must be convinced that the acquisition or purchase price is at least equal to Air Florida's going concern value. These requirements constitute a reasonable application of FAA slot allocation policies to a company that, in good faith, plans to purchase or acquire a controlling interest in a bankrupt air carrier.

The bankruptcy court authorized the Midway/Air Florida transaction and the FAA conditionally approved Midway's use of the Air Florida slots. Thereafter, the administrator wrote:

> With regard to the conditions set forth in my September 12 letter, I make the following findings:
>
> 1. There is in place, as evidenced by the bankruptcy court's order of September 26, a court-approved and binding agreement with Midway to purchase all of Air Florida's aviation assets; and
>
> 2. The purchase price to be paid by Midway for Air Florida's assets is at least equal to Air Florida's going concern value and not just the liquidated value of its individual assets. (This finding is based on all the evidence presented to me, which includes a report on the 'Estimated Valuation of a Potentially Reorganized Air Florida' prepared by Touche Ross & Company at my request, the facts and arguments presented to the bankruptcy court, letters submitted by air carriers opposing Midway's requests, and consultations with my staff. I note that Judge Weaver of the Bankruptcy Court reached the same conclusions in his Findings of Fact and Conclusions of Law.)
>
> Based on these two findings, I conclude that Midway is eligible, as successor in interest to Air Florida, to use Air Florida's high density slots and to be treated

as one carrier with Air Florida for purposes of slot utilization, as follows:

1. When Midway's planned purchase of Air Florida's assets closes with an actual exchange of consideration between the parties; or

2. When Midway establishes letter(s) of credit equal to 15% of the cash purchase price, which letters may be exercised by the beneficiaries should Midway default on its agreement to purchase the assets of Air Florida.

Midway filed the requisite letter of credit and the transaction was approved. This FAA decision is the subject of the second petition for review filed by Eastern, No. 84–5927.

## II. Issues and Discussion.

■ This Court's review of FAA orders is governed by 49 U.S.C.A. § 1486(e). That section provides that "the findings of facts by the Board or Administrator, if supported by substantial evidence, shall be conclusive." Case law confirms that appeals court review of federal administrative decisions is ordinarily quite deferential. *See, e.g., Starr v. Federal Aviation Administration,* 589 F.2d 307, 310–311 (7th Cir.1978). The Eighth Circuit specifically addressed airport slot allocation in *Northwest Airlines, Inc. v. Goldschmidt,* 645 F.2d 1309 (8th Cir.1981), noting that its "standard of review of the Secretary's action [pertaining to slot allocation] is one of minimal rationality. Our task has been to carefully examine the record to ensure, as a matter of administrative law, that the Secretary's action was rational and based on consideration of the relevant factors." *Id.* at 1319. This Court's review of the FAA orders is similarly deferential.

### A. FAA Disapproval of the Eastern/Air Florida Slot Sale.

■ Eastern challenges the first FAA order on the ground that the FAA acted improperly in denying the Eastern/Air Florida slot sale and approving the Air Florida/Midway slot transfer when the two agreements were substantially the same. We find this argument without merit. We also find it needlessly repetitive, and thus we treat it summarily—Eastern raised a similar, and similarly uncompelling, claim before us in its unsuccessful challenge to the Air Florida/Midway transaction, *Air Florida ex rel. Delta Air Lines, Inc. v. Air Florida Systems,* Inc. No. 85–5519 (11th Cir. August 13, 1985) (unpublished per curiam).

The proposed Eastern/Air Florida transaction and the Air Florida/Midway transaction were not alike. The former was purely and simply a sale of slots; the latter was not a sale of slots but the sale of Air Florida as a going concern. Midway obtained the use of the Air Florida slots as a successor, not a purchaser. It is well-established FAA policy that successor carriers are considered as one with principal carriers for the purpose of slot allocation and use. *See* SFAR 44–5 Appendix ¶ 2(b), *reprinted in* 14 C.F.R. Part 91 (1984) at 136(1)(b).

The Air Florida transaction was not, as Eastern claims, analogous to that disapproved by the Fifth Circuit in *In re Braniff Airways, Inc.,* 700 F.2d 935 (5th Cir.1983). There the FAA determined that PSA did not in fact succeed to the rights, duties and obligations of Braniff. Letter of January 26, 1983 from FAA Administrator to Chairman/President of Braniff Airways, R.E. at 43–45.

Thus, we again reject the suggestion that the Air Florida/Midway transaction was no more than the kind of slot sale ordinarily prohibited by the FAA.

### B. FAA Approval of the Air Florida/Midway Slot Transfer.

Eastern challenges the FAA order approving the transfer of slots from Air Florida to its successor, Midway Airlines, on three grounds. It claims (1) that the FAA was disqualified from approving the Air Florida/Midway transaction because of a conflict of interest; (2) that the FAA had no authority to "establish the conditions under which Midway could become Air Florida's successor"; and (3) that the FAA failed to explain its decision adequately. All three claims are meritless.

■ We hold as a preliminary matter that Eastern does not have standing to raise these objections. Eastern has suffered no injury from the FAA's approval of the Midway/Air Florida transaction. If that transaction had not been approved, Eastern still would not in consequence have any right to the airport slots. "[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'" *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (citation omitted).

■ But we note further that Eastern's claims could not succeed on the merits. First, there was no actual conflict, as Eastern claims, between the FAA's role as slot regulator and its role as administrator of the federal aircraft guarantee program (through which the FAA also became Air Florida's major creditor). The FAA had no direct pecuniary interest in the outcome of the Air Florida/Midway transaction because any money it recouped as a result would belong simply to the public fisc—not to the FAA budget. (Indeed, the FAA should have recovered roughly the same amount with any other purchaser if the Touche Ross going concern valuation commissioned by the FAA was sound; thus, it had no reason to favor one purchaser over another.) Further, even if this indirect interest in preventing loss to the federal budget *did* create a conflict, the FAA would by this analysis be similarly disqualified from approving the Eastern/Air Florida slot sale if the government might recover any money from that transaction. And no other federal agency could authorize this slot transfer because all share public funding—thus, as appellee contends, the "rule of necessity" might have forced the FAA to make this decision in any case. *See FTC v. Cement Institute,* 333 U.S. 683, 700–703, 68 S.Ct. 793, 803–804, 92 L.Ed. 1010 (1948).

■ As to Eastern's second argument, we find that the FAA was within its authority to find that Midway was a successor to Air Florida. We note that Eastern did not raise this "jurisdictional" challenge before the FAA, so it is technically barred from arguing it here. Section 49 U.S.C.A. § 1486(e) provides that:

> No objection to an order of the Board or Administrator shall be considered by the court unless such objection shall have been urged before the Board or Administrator or, if it was not so urged, unless there was reasonable grounds for failure to do so.

Nevertheless, even if the objection were properly raised, it would fail. Eastern argues that the successorship finding made by the FAA administrator was in effect an "economic decision" that only the Department of Transportation had the authority to make. A similar argument was rejected by the Eighth Circuit in *Northwest Airlines, Inc. v. Goldschmidt, supra,* in which an FAA slot regulation, although it had a tangential economic impact, was not "economic regulation *per se*" but "instead a regulation of the efficient utilization of the navigable airspace of the United States," *Id.* at 1315. This decision represents a similar regulation of airspace—one that the FAA is clearly authorized to make.

■ Finally, contrary to Eastern's assertion, the FAA administrator's decision was adequately explained. Indeed, it appears to us to speak unambiguously for itself. Had Eastern been confused about the significance of the order it had considerable opportunity to ask the FAA for clarification of its reasoning. But it is difficult for us to see how the order could be more lucidly put.

Accordingly, we AFFIRM.