PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
07/30/99
THOMAS K. KAHN
CLERK

_____

Nos. 98-4229, 98-5561

_____

D. C. Docket No. 97-6766-Cv-WDF

LAKER AIRWAYS, INC.,

Plaintiff-Appellant,

versus

BRITISH AIRWAYS, PLC,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(July 30, 1999)**

Before BIRCH and CARNES, Circuit Judges, and MILLS*, Senior District Judge.

_____
*Honorable Richard Mills, Senior U.S. District Judge for the Central District of
Illinois, sitting by designation.

BIRCH, Circuit Judge:

Laker Airways, Inc. ("Laker") appeals the district court's order dismissing its antitrust action against British Airways PLC ("BA") pursuant to Federal Rule of Civil Procedure 19 and the "act of state" doctrine. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

Laker sued BA under federal and Florida state antitrust laws alleging that BA combined and conspired to restrain and monopolize scheduled passenger air service between Miami, Florida and London, England. Laker named as co-conspirators certain individuals and Airport Coordination Ltd. ("ACL"), a private English corporation appointed by the government of the United Kingdom to coordinate requests for landing and take-off times ("slots") at British airports. As relief, Laker sought treble damages and a permanent injunction requiring BA to (1) cease violating antitrust laws, (2) transfer to Laker a single daily arrival and departure slot at London's Gatwick Airport, and (3) enter into an interline ticketing and baggage agreement with Laker.[1]

---

[1] Although Laker sought a transfer of slots at the time this case was before the district court, because the airline no longer operates in the transatlantic market, Laker now asserts that it seeks only monetary relief. Because the specific form of relief does not change our analysis, we need not further address this issue.

The district court dismissed Laker's complaint because Laker failed to join ACL, an indispensable party within the meaning of Rule 19, and further concluded that even had ACL been joined, the act of state doctrine barred Laker's suit. Laker then filed a motion for relief from the judgment pursuant to Federal Rule of Civil Procedure 60(b)(3), which the district court denied.

On appeal, Laker argues that the district court improperly applied Federal Rule of Civil Procedure 19 because it did not consider whether in equity and good conscience Laker's suit should be allowed to proceed in the absence of ACL. Laker also contends that the district court should not have applied the act of state doctrine to the actions of ACL because the government of the United Kingdom has no role in slot allocation.

## II.  DISCUSSION

### A.  Slot Allocation Process

The transatlantic airline industry is a highly regulated business controlled, to a great extent, through negotiations among national governments.[2] The governments of the United States and the United Kingdom have signed two bilateral treaties which control many aspects of the transatlantic industry, including

---

[2]Although in the past decade there has been an increased push to deregulate the international air transportation business in order to increase competitiveness, national governments remain highly involved.

3

factors such as the number of carriers, fares, capacity, and route designations.[3]  As a result of these international agreements, a backdrop of national sovereignty pervades discussions about transatlantic air transport issues.

While bilateral treaties control the number of entrants into the Miami-London market and designate the U.S. airlines given access to London's Heathrow Airport, forcing Laker to land at London's Gatwick Airport, the gravamen of Laker's complaint is that BA conspired with ACL to prevent Laker from being allocated desirable landing and take-off slots at Gatwick.[4]  We must first consider, then, the United Kingdom's procedure for slot allocation.  On January 18, 1993, the Council of the European Communities issued a regulation setting forth the common rules for the allocation of slots at Community airports.  See Council Regulation 95/93, 1993 O.J. (L 14).  This regulation required Member States to "ensure the appointment of a natural or legal person" to act as airport coordinator, after consultations with the air carriers regularly using the airport facilities.  Id., art.

---

[3]Agreement Between the Government of the United States of America and the Government of the United Kingdom of Great Britain Relating to Air Services Between Their Respective Territories, Feb. 11, 1946. U.S.-U.K., 60 Stat. 1499 [Bermuda I], and 23 July 1977, 28 U.S.T. 5367, T.I.A.S. No. 8641 [Bermuda II].

[4]Although Laker receive slots at Gatwick Airport for the summer 1997 season, it contends that BA and ACL acted in tandem to prevent Laker from obtaining time slots that are more commercially advantageous.  Laker asserts that slots allowing for arrival in London in the early morning hours and departures between 10:00am and 1:00pm local time are the most commercially desirable because they allow for convenient connections to other flights and enable passengers to reach Miami before dark.

4(1). The coordinator is then responsible for the allocation of slots. Id., art. 4(5). The regulations further provide that the Member State "shall ensure that the coordinator carries out his duties . . . in an independent manner." Id., art. 4(2). The coordinator is to act in "a neutral, non-discriminatory and transparent way." Id., art. 4(3). Finally, the regulations provide that "[s]lots may be freely exchanged between air carriers or transferred by an air carrier from one route, or type of service, to another, by mutual agreement or as a result of a total or partial takeover or unilaterally. Any such exchanges or transfers shall be transparent and subject to confirmation of feasibility." Id., art. 8(4).

To implement the European Community regulation, the Parliament of the United Kingdom enacted The Airports Slot Allocation Regulations 1993, S.I. 1993, No. 1067 ("ASAR"). This legislation provides that the appointment of any person as a coordinator must be approved by the Secretary of State for Transport, the Minister designated for the purpose of monitoring, among other things, the allocation of slots. The Secretary may withdraw approval of a coordinator if he has not performed in an independent manner. ASAR, ¶ 4(3). ACL is the designated slot allocation coordinator for London's Gatwick Airport. ACL is composed of a representative of all United Kingdom airlines who wish to participate. Each member of ACL may designate a representative to the Board of

ACL. Each representative, or director, has an equal, single vote in the actions of the organization. Laker alleges that by virtue of its size and importance in the airline business, BA has been able to control the decisions of ACL.

## B.    Rule 19 Dismissal – Slot Allocation

We review dismissal for failure to join an indispensable party for abuse of discretion. <u>Mann v. City of Albany</u>, 883 F.2d 999, 1003 (11th Cir. 1989). Federal Rule of Civil Procedure 19[5] sets forth a two-part analysis. First, the court must determine whether the person in question should be joined. If the person should be

---

[5]Rule 19 provides:

(a) **Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

(b) **Determination by Court Whenever Joinder not Feasible.** If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

6

joined, but for some reason cannot be, the court must analyze the factors outlined in Rule 19(b) to determine whether "in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person thus regarded as indispensable." Fed. R. Civ. P. 19(b). See also Wymbs v. Republican State Executive Comm., 719 F.2d 1072, 1079 (11th Cir. 1983) (applying Rule 19(a) & (b)).

A.     Necessary Party

A party is considered "necessary" to the action if the court determines either that complete relief cannot be granted with the present parties or the absent party has an interest in the disposition of the current proceedings. Id. Laker argues that ACL need not be joined in the suit because (1) it seeks now only monetary damages, which BA can provide without ACL and (2) even if Laker were still pursuing slots, BA could transfer a slot to Laker without the involvement of ACL. Laker is correct in arguing that courts have held that joint tortfeasors need not all be joined in one lawsuit. See Temple v. Synthes Corp., 498 U.S. 5, 7, 111 S. Ct. 315, 316, 112 L.Ed.2d 263 (1990) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit. . . . The Advisory Committee Notes to Rule 19(a) explicitly state that a tortfeasor with

7

the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability.") (citations and quotations omitted).

The interests of ACL under the circumstances presented here, however, are more significant than those of a routine joint tortfeasor. Although the relief Laker presently seeks may not directly implicate ACL because there would be no order directed at ACL, Laker's antitrust claims necessarily require that a court evaluate ACL's conduct in relation to Laker, thereby substantially implicating ACL's interests. See Occidental Petroleum Corp. v. Buttes Gas & Oil Co., 331 F. Supp. 92, 105-06 (C.D. Cal. 1971) (while under Rule 19 there are some cases which state that antitrust co-conspirators need not be joined, here, joint tortfeasor still had interests covered by Rule 19(a) and therefore had to be joined), aff'd, 461 F.2d 1261 (9th Cir. 1972). In order to prove its antitrust claims, Laker would be required to show that ACL acted in other "than an independent manner." Such a ruling would surely implicate the interests of ACL because the United Kingdom's enabling legislation, ASAR, requires that the Secretary of State for Transport withdraw its approval of an appointed coordinator if its behavior is not neutral. ASAR, ¶ 4(3). Likewise, in Boles v. Greeneville Housing Authority, 468 F.2d 476 (6th Cir. 1972), the Sixth Circuit determined that the Department of Housing and Urban Development (HUD) was an "indispensable party" when plaintiffs

8

"indirectly attacked" HUD's approval of a development plan. Id. at 479.[6] See also Doty v. St. Mary Parish Land Co., 598 F.2d 885, 887 (5th Cir. 1979) ("A district court may refuse to proceed with the action if prejudice would result to either the absent party or to parties already joined.").

Furthermore, we held in Haas v. Jefferson National Bank, 442 F.2d 394 (5th Cir. 1971), that a joint tortfeasor will be considered a necessary party when the absent party "emerges as an active participant" in the allegations made in the complaint that are "critical to the disposition of the important issues in the litigation." Id. at 398. Here, Laker is alleging that BA conspired with ACL to favor BA in the slot allocation process. According to Laker's complaint, ACL would certainly be considered an active participant in the allegations. ACL is the only entity that can allocate slots at Gatwick Airport. Without ACL, BA would not be able to manipulate, as Laker suggests, the slot allocation process. ACL, then, has significant interest in the resolution of the allegations surrounding the slot allocation process because the resolution will inevitably comment upon the

---

[6]We applied the Boles analysis with approval in Ranger Insurance Co. v. United Housing, 488 F.2d 682, 683 (5th Cir. 1974). In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

neutrality and independence of the process. We determine, therefore, that ACL is a necessary party and should be joined, if feasible.[7]

### 2. Analysis Under Rule 19(b)

If a necessary party cannot be joined, the court must then proceed to Rule 19(b) and consider whether in "equity and good conscience," the suit should proceed without the necessary party. The court balances four factors in this analysis: (1) how prejudicial a judgment would be to the nonjoined and joined parties, (2) whether the prejudice could be lessened depending on the relief fashioned, (3) whether the judgment without joinder would be adequate, and (4) whether the plaintiff would have any alternative remedies were the case dismissed for nonjoinder. See Wymbs, 719 F.2d at 1079.

The primary factor weighing in favor of dismissal of this action is the prejudice that would accrue to the interest of ACL, the nonjoined party, if the case were to proceed. In a broad sense, the United Kingdom has the ultimate responsibility for ensuring that the designated airport coordinator acts in a neutral and independent manner. As a result, Laker's suit is, in essence, a challenge to the

---

[7]The record is devoid of any explanation for why Laker declined to name ACL as a defendant, except for a brief reference during oral argument to "service of process" problems. Nonetheless, we assume it is not feasible to join ACL and proceed with an analysis of Rule 19(b) to determine whether the suit should proceed in the absence of ACL.

United Kingdom's implementation of EC Regulation 95/93 and ACL's slot allocation process under that Regulation and ASAR.

Because slots are a limited resource, see Eastern Airlines v. FAA, 772 F.2d 1508, 1510 (11th Cir. 1985) ("At high density airports, slots are scarce and, hence, quite valuable."), the process of allocating slots has been the source of many disputes among air carriers and their representative countries.[8] EC Regulation 95/93 itself anticipates the possibility of international difficulties caused by the slot allocation process and provides for "appropriate action" to be taken against a state that violates the non-discrimination provisions of the regulation. Id., art. 12. See also Air Canada v. United States Dep't of Transportation, 843 F.2d 1483, 1485-86 (D.C. Cir. 1988) (discussing "long-running controversy between Canada and the United States over landing rights at LaGuardia Airport"). The government of the United Kingdom maintains control over the number of slots that can be issued at each airport. See R1-5-4 ("U.K. Air Traffic Control has established the number of landings and take-offs (called 'slots') that will be permitted in any hour at Gatwick."). ACL, as the United Kingdom's designated slot coordinator at Gatwick Airport, has the responsibility of ensuring the slots are allocated in accordance with

---

[8]In the United States, the U.S. Department of Transportation is designated to perform the task of assigning slots at U.S. airports. 14 C.F.R. §§ 93.121-93.133, 93.211-93.251 (1996).

Regulation 95/93 and ASAR in an independent and neutral manner. If ACL does not fulfill this responsibility, the Secretary of State for Transport may withdraw its approval of ACL as airport coordinator. ACL, then, would be prejudiced by not being able to participate in a proceeding which would, at the very least, comment upon ACL's allocation of slots.

In considering the second and third factors of Rule 19(b), Laker argues that relief could be fashioned so as not to prejudice ACL because Laker now exclusively seeks money damages from BA. As previously discussed, we acknowledge that Laker no longer asks the court to order ACL directly to undertake or cease specific conduct. Nevertheless, in order to establish an antitrust claim against BA, Laker necessarily would have to demonstrate that ACL failed to follow EC and UK legislative directives. The adjusted relief Laker seeks does not sufficiently diminish or eliminate the prejudice that would inure to ACL as a nonjoined party if a court were to determine that ACL acted improperly.

Finally, we note that our consideration of the fourth factor applicable to our analysis of Rule 19(b) -- whether the plaintiff would have an alternative remedy were the case dismissed for nonjoinder -- also suggests that dismissal is appropriate. As observed by BA, Laker may still: (1) raise a complaint with the United Kingdom's Secretary of State for Transport that ACL is not allocating slots

12

in an independent and neutral manner or (2) petition the United States Department of Transportation and the Federal Aviation Administration to restrict slots provided to the United Kingdom because of the alleged unfair slot allocation at Gatwick Airport.[9] See Keweenaw Bay Indian Community v. Michigan, 11 F.3d 1341, 1348 (6th Cir. 1993) (where administrative agency was authorized to address plaintiffs' complaint, plaintiffs had an adequate remedy under fourth factor of Rule 19(b)).[10] We therefore determine that Laker has available other viable avenues of redress.

In sum, we find that each of the four factors outlined in Rule 19(b) argues in favor of dismissal of the portion of Laker's complaint concerning the slot allocation process at London's Gatwick Airport. As a result, we hold that the district court did not abuse its discretion in dismissing that portion of Laker's suit.[11]

## C.    Rule 19 Dismissal – Interline Agreements

---

[9]Pursuant to the International Air Transportation Fair Competitive Practices Act of 1974, codified at 49 U.S.C. § 41310, the United States has deemed that foreign governments are held responsible when slots are not distributed properly at airports within their borders

[10]In light of the difficult history of air transport relations in the international community, the fact that the United States has adopted administrative procedures to address alleged partiality in the slot allocation process further emphasizes the interest of ACL, and indirectly, the United Kingdom.

[11]Since we affirm the district court's conclusion that under Federal Rule of Civil Procedure 19 ACL is a necessary party that cannot be joined for reasons other than the act of state doctrine, thereby requiring dismissal of the suit, we need not address the district court's application of the act of state doctrine.

To the extent, however, that Laker complains that BA has improperly refused to enter into interline ticketing and baggage agreements with Laker, the interests of ACL are not implicated. Interline agreements allow passengers to have their baggage automatically transferred between airlines on one baggage check ticket. Laker alleges that interline agreements with BA are necessary in order to compete effectively in the Miami-London market. An interline agreement, in contrast to slot allocation, is simply a contract between airline carriers and involves no other authorizing parties. As a result, no interests of ACL are implicated by interline agreements.

In addition, we conclude that ACL cannot be considered a necessary party to Laker's interline agreements claim under the "complete relief" prong of Rule 19(a) because it is solely the airlines themselves that determine whether to enter into these agreements. As a result, the district court abused its discretion in dismissing the interline agreements portion of Laker's complaint on Rule 19 grounds. See Jota v. Texaco, Inc., 157 F.3d 153, 161-62 (2d Cir. 1998) (in suit by residents of Ecuador against Texaco for environmental and personal injuries allegedly incurred as a result of Texaco's oil fields in Ecuador, court affirmed Rule 19 dismissal of claims where complete relief could not be accorded by Texaco, but allowed claims not related to the actions of the government of Ecuador); Peregrine Myanmar Ltd

14

v. Segal, 89 F.3d 41, 48-49 (2d Cir. 1996) ("complete relief" can be accorded where nothing in the district court's statements or final judgment requires the Myanmar Ministry of Fisheries to do anything or change any of its positions). We imply no view about whether the interline agreements portion of the complaint may be subject to dismissal on grounds other than Rule 19.

## D. Laker's Rule 60(b)(3) Motion

Following the district court's dismissal of Laker's suit, pursuant to Rule 19 and the act of state doctrine, the district court also rejected Laker's Rule 60(b)(3) motion for relief from judgment. Laker argued that the district court should reevaluate its act of state decision in light of a Diplomatic Note entered by the Government of the United Kingdom in another case concerning slot allocation. Laker contends the Note provides evidence that ACL is not acting on behalf of the government of the United Kingdom when it allocates slots. Since we hold, without ruling upon the act of state doctrine, that the district court was correct in dismissing this case under Rule 19(b), Laker's appeal concerning the denial of its Rule 60(b)(3) motion is moot.

## III. CONCLUSION

We affirm the judgment of the district court dismissing Laker's suit against BA concerning the slot allocation process at Gatwick Airport because ACL is an

indispensable party under Federal Rule of Civil Procedure 19. We reverse the district court's dismissal of Laker's claim concerning BA's refusal to enter into certain interline agreements with Laker because ACL is not a necessary party to that claim under Rule 19(a) and remand that claim to the district court for further proceedings in light of this opinion.

AFFIRMED in part, REVERSED in part, and REMANDED.