[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10913
Non-Argument Calendar
_____

D.C. Docket No. 8:12-cv-01066-MSS-TBM

GEICO GENERAL INSURANCE COMPANY,

Plaintiff-
Counter Defendant-
Appellee,

versus

ELLIOT GOULD,
HUSSEIN H. FARAG,
SARA FARAG,

Defendants-
Counter Claimants-
Appellants,

MONICA R. FARAG,

Defendant.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(December 15, 2014)

Before TJOFLAT, JORDAN and KRAVITCH, Circuit Judges.

PER CURIAM:

Hussein Farag, his daughter Sara Farag, and Elliot Gould appeal from the district court's grant of summary judgment to GEICO Insurance Company (GEICO) in GEICO's action seeking a declaratory judgment that it had not acted in bad faith in handling Gould's claim against the Farags. For the reasons that follow, we affirm in part and vacate and remand in part.

I.

On November 13, 2008, Sara Farag was involved in an accident with Elliot Gould.[1] Gould suffered several broken bones and required multiple surgeries, and his motorcycle sustained significant damage. At the time of the accident, Sara was driving her father's car, which was insured by GEICO. The policy contained bodily injury coverage in the amount of $100,000 per person, and property damage coverage in the same amount.

GEICO assigned the claim to Claim Examiner Lacey Mathes, who made several attempts to contact Gould immediately following the accident, but Gould had retained James Holliday to represent him. Mathes informed Holliday that GEICO was prepared to offer the policy limit for Gould's injuries and sent him a copy of a release before GEICO would issue the check. In early December, Mathes repeatedly reminded Holliday that GEICO was prepared to tender the

---

[1] Sara Farag's mother, Monica Farag was a passenger in the car Sara was driving.

2

payment for Gould's bodily injuries. Mathes sent copies of this correspondence to the Farags, along with a letter advising them that Gould's claim could exceed the policy limits, alerting them that they could contribute their own funds to cover any settlement in excess of the coverage limit, and reminding the Farags that they could obtain their own counsel if desired.

While the claim was pending, the Farags gave their examinations under oath. GEICO retained attorney Harold Saul to represent them. In early January, Mathes contacted Holliday to determine the status of the payment offer. On January 30, Holliday sent Mathes a time-limited demand letter in which he indicated that Gould would settle all claims in exchange for payment of $107,720.35. Holliday gave GEICO until February 16, 2009, to accept the settlement offer. GEICO apparently received this letter on February 2, 2009, but the parties dispute whether the Farags received copies of this correspondence.

GEICO was unwilling to accept Gould's offer until it could confirm that Gould was the actual owner of the motorcycle. The police report from the accident and the state certificate of title showed that the bike was registered to Crystal Johnson, Gould's girlfriend. In response to GEICO's attempts to confirm ownership, Holliday sent GEICO copies of a transfer of title in which Johnson

3

transferred the bike to Gould.[2]  Although the transfer was dated September 9, 2008, it was never registered with the state.  In their depositions, Johnson and Gould explained that Gould was unable to register the bike himself because of an outstanding lien on his driver's license.  But both testified that the bike belonged to Gould: Gould had purchased it, maintained it, made customized improvements to it, and was the only one who used it.  Nevertheless, GEICO continued to view Johnson as the legal owner, and thus it would not authorize payment to Gould for property damage under the Farags' policy.  Holliday informed GEICO that he also represented Johnson, and that Johnson was prepared to sign a release for all claims.  At no time did GEICO request an extension of time to respond to Gould's settlement demand in order to address the ownership concern.  Mathes also rejected Holliday's offer to have Johnson sign a release unless GEICO also received a letter of representation confirming that Holliday represented Johnson.

When GEICO did not respond by Gould's deadline, Gould filed suit in state court against Hussein and Monica Farag and Sara Farag.[3]  Nevertheless, GEICO continued to attempt to settle the bodily injury claim and to confirm the actual ownership of the bike.  Between February and September 2009, GEICO repeatedly

---

[2]  GEICO claimed that copies of this document were illegible.  Holliday stated in his deposition that he provided at least three copies to GEICO.  And the record includes at least one legible copy of the transfer.

[3]  Monica settled the claims against her for the $100,000 bodily injury coverage limit, which GEICO paid.  She was then dismissed from the state court case.  Although GEICO named Monica as a party in this declaratory judgment, the district court dismissed Monica, and she is thus not a party to the instant appeal.

pursued the ownership issue and tried to contact Holliday to discuss the matter. Their attempts went unanswered. Following a trial in state court, the jury found in favor of Gould and awarded damages in excess of $298,000. Eventually, both Gould and Johnson signed a release of claims, and GEICO paid approximately $5,900 to settle the property damage claims.

In May 2012, GEICO filed a complaint for declaratory judgment against the Farags and Gould seeking to confirm that it had not engaged in bad faith, and thus was not liable to the Farags or Gould for the state-court judgment that exceeded the policy limits. The Farags and Gould, in turn, filed counter-claims accusing GEICO of acting in bad faith. Gould also filed a motion to dismiss for lack of jurisdiction, arguing that he was not a proper party to the suit.

The district court denied Gould's motion to dismiss, finding that he was an indispensable party under Fed. R. Civ. P. 19. The court then found that GEICO had not acted in bad faith in handling Gould's claim. First, the court found that Gould did not have a valid claim for property damage because he was not the titled owner of the motorcycle, and thus GEICO was under no obligation to negotiate, pay, or advise the Farags to contribute to settle the property damage claim. Second, the court found with respect to the bodily injury claim, that GEICO promptly offered payment and continued to work with Holliday to tender the policy limit, and, because Gould was unwilling to settle the bodily injury claim

without payment for the property damage, GEICO had no real opportunity to settle the bodily injury claim. Finally, the court found that GEICO kept the Farags properly informed, but even if it did not, the failure was at most negligent and did not amount to bad faith. The Farags and Gould now appeal.

## II.

The Farags argue that there were material facts in dispute over whether GEICO acted in bad faith. They note that GEICO offered to settle all bodily injury claims and that Johnson was prepared to sign a release of all property claims, but that GEICO rejected any such release unless Holliday supplied a letter of representation from Johnson first. They further note that this is exactly what GEICO ultimately did — paying Gould for the property damage once it had a release from Johnson without a separate letter of representation. The Farags also argue that the court erroneously found that GEICO effectively communicated with them, as there is no evidence they received the letter GEICO claimed to have sent regarding the settlement offer. They note that GEICO never informed them of its concern over ownership of the bike. Finally, the Farags dispute the district court's finding that the name on the title was conclusive as to ownership.

Gould also argues that the court erred in finding that he was not the owner of the bike and that GEICO acted in bad faith in conducting the negotiations. He further contends that he was not a proper party to this action and should have been

6

dismissed after he confirmed that he was willing to abide by the resolution of the case.

We review a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the non-moving party. *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1161-62 (11th Cir. 2006). Summary judgment is appropriate if the movant shows that no genuine issue of material fact exists, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Brooks*, 446 F.3d at 1162. If the moving party meets its initial burden, the non-movant then bears the responsibility to demonstrate the existence of a genuine issue of material fact. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). Because this case is based on diversity jurisdiction, we apply the law of the forum state, Florida. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

## III.

Under Florida law, an insurer has a duty to handle claims as one would "in the management of his own business." *Perera v. U.S. Fid. & Guar. Co.*, 35 So.3d 893, 898 (Fla. 2010) (citation omitted). This "duty of good faith" includes a duty to attempt settlement "where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Id.* (citation omitted). "Breach of this

duty may give rise to a cause of action for bad faith against the insurer." *Id.*   In

Florida, either a third-party claimant or the insured may bring this "cause of action

when an insurer has breached its duty of good faith and that breach results in an

excess judgment being entered against its insured." *Id.* at 899.  To fulfill the duty

of good faith, an insurer must "refrain from acting solely on the basis of their own

interests in settlement." *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So.2d 55,

58 (Fla. 1995).  Ordinarily, whether the insurer has acted in bad faith is a jury

question. *Cheek v. Agric. Ins. Co. of Watertown, N.Y.*, 432 F.2d 1267, 1269 (5th

Cir. 1970).

Reviewing Florida law, this court has held that "a certificate of title is

merely evidence of, and is not a requirement of, establishing ownership." *In re

Kalter*, 292 F.3d 1350, 1360 (11th Cir. 2002).  As the Florida courts have

explained, a certificate of title gives the presumption of ownership, a presumption

that may be rebutted by other competent evidence. *Sterling v. GEICO*, 600 So.2d

14, 16 (Fla. Dist. Ct. App. 1992); *see also Birmingham Fire Ins. Co. v. Rosado*, 42

So.3d 896, 898 (Fla. Dist. Ct. App. 2010).

On review, we agree with the appellants that the district court erred by

granting summary judgment.  The district court hinged its decision on its finding

that Gould was not the legal owner of the bike.  Based on this finding, the court

concluded that GEICO could not have acted in bad faith for refusing to settle the

8

property damage claim or for failing to inform the Farags about the settlement offer, and it determined that GEICO had no opportunity to settle the bodily injury claim because Gould would not consider payment for bodily injury without a resolution of property damage.

We find the holding in *Sterling* instructive.  There, the owner of a motorcycle transferred the title to his girlfriend, but he never relinquished control over the bike.  600 So.2d at 15.  After an accident, the insurance company, coincidentally GEICO, refused to pay, taking issue with ownership of the bike. The Florida appellate court held that "[a] registered certificate of title establishes only presumptive ownership.  Such presumption may be overcome by competent evidence." *Id.* at 16.  The court noted other statutory definitions in which "owner" included "any person controlling any motor vehicle by right of purchase, gift, lease, or otherwise." *Id.*  Moreover, the court explained that there was at least a question of material fact as to ownership, which precluded summary judgment. *Id.*

Here, the district court placed too much emphasis on the registered title of ownership.  Rather, we conclude that there was at least a question of fact regarding ownership in light of the other evidence submitted to show Gould was the actual owner.  And because the court rested all of its legal conclusions on this determination, there remains a question of fact whether GEICO acted in bad faith by refusing to settle with Gould for the property damage.  We note that GEICO

9

eventually settled with Gould and Johnson after Johnson signed a release – exactly what Holliday offered to do, but Mathes refused to accept, before Gould filed suit. Therefore, summary judgment was improper, and we vacate and remand for further proceedings.

IV.

With respect to Gould's motion to dismiss, we agree with the district court's conclusion that Gould was an indispensable party. "We review dismissal for failure to join an indispensable party for abuse of discretion." *Laker Airways, Inc. v. British Airways*, 182 F.3d 843, 847 (11th Cir. 1999) (citation omitted). "A party is considered 'necessary' to the action if the court determines either that complete relief cannot be granted with the present parties or the absent party has an interest in the disposition of the current proceedings." *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 847 (11th Cir. 1999).

In *Ranger Insurance Company v. United Housing of New Mexico*, 488 F.2d 682 (5th Cir. 1974), this court explained that absent tort claimants were indispensable parties to the insurer's declaratory judgment action against the insured because, were the case allowed to proceed without them, "the claimants' interests would be prejudiced." *Id.* at 683. Gould had an obvious interest in the declaratory judgment as a means to obtain the award arising from the jury verdict. And although Gould offered to stipulate that he would be bound by the outcome of

10

the litigation between GEICO and the Farags, we cannot say that the district court abused its discretion in finding Gould indispensable.

**AFFIRMED in part; VACATED and REMANDED in part.**

11