# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-3773

_____

Ramona Two Shields; Mary Louise Defender Wilson, individually and on behalf
of others similarly situated

*Plaintiffs - Appellants*

v.

Spencer Wilkinson, Jr.; Rick Woodward; Robert Zinke; Dakota-3 E&P Company,
LLC, Now known as WPX Energy Williston, LLC; Zenergy, Inc.; Dakota-3, LLC;
Dakota-3 Energy, LLC; Zenergy Properties 6 Ft. Berthold Allottee, LLC; John Doe

*Defendants - Appellees*

------------------------------

Indigenous Law and Policy Center

*Amicus on Behalf of Appellant(s)*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: October 9, 2014
Filed: June 12, 2015

_____

Before MURPHY, SMITH, and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge.

Appellants Ramona Two Shields and Mary Louise Defender Wilson are Indians with interests in land allotted to them by the United States under the Dawes Act of 1887. Such land is held in trust by the government, but may be leased by allottees. Two Shields and Defender Wilson leased oil and gas mining rights on their allotments to appellee companies and affiliated individuals who won a sealed bid auction conducted by the Board of Indian Affairs (BIA) in 2007. Subsequent to the auction, appellants agreed to terms with the winning bidders, the BIA approved the leases, and appellees sold them for a large profit. Appellants later filed this putative class action in the District of North Dakota,[1] claiming that the United States had breached its fiduciary duty by approving the leases for the oil and gas mining rights, and that the defendant bidders aided, abetted, and induced the United States to breach that duty. The district court concluded that the United States was a required party which could not be joined, but without which the action could not proceed in equity and good conscience, and dismissed the case. Appellants challenge that dismissal. For the reasons stated below, we affirm.

I.

Two Shields and Defender Wilson are Indians who hold allotments on the Bakken Oil Shale Formation in the Fort Berthold Reservation in the state of North Dakota. Two Shields is a member of the Three Affiliated Tribes, a union of the Mandan, Hidatsa, and Arikara Nations which operate as one tribal unit located on and near the Fort Berthold Reservation. Defender Wilson is a member of the Standing Rock Sioux Tribe. Following a sealed bid auction, Two Shields leased the oil and gas mining rights for 320 acres of an allotment to the high bidder Zenergy Properties.

---

[1]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

Federal regulations provide for a minimum royalty rate of 16 ⅔%; lower rates may be permitted if found to be in the best interest of the Indian mineral owner. 25 C.F.R. § 211.41(b). Two Shields received a lease bonus of $451.48 per acre and an agreed 18% royalty rate. Two Shields also entered into another lease with Zenergy Properties for an additional 320 acres of an allotment; Defender Wilson is also an owner and heir in trust of this property. The lease provided for a bonus of $400 per acre and an 18% royalty rate. Before their leases had operative effect, the BIA certified as required by statute that they were "in the best interest of the Indian mineral owner." See 25 U.S.C. § 396 (granting the Secretary of the Interior authority to promulgate regulations regarding leasing of mining interests on allotted lands); 25 C.F.R. § 212.20 (regulations permitting Secretary to reject winning bid and readvertise a mineral land tract for sale "if the Secretary determines that it is not in the best interest of the Indian mineral owner to accept any of the bids"). The leases were approved by the BIA in December 2007 and February 2008.

Appellee Spencer Wilkinson is a member of the Three Affiliated Tribes and manages a casino on the Fort Berthold Reservation. Appellants allege that he and appellee Robert Woodward devised a scheme to obtain funding from an unknown third party, to use that funding to acquire oil and gas leases from the plaintiffs, and to sell the oil and gas leases for a profit. Their complaint alleges that defendants furthered this plot by using political influence to select BIA superintendents who would approve the leases and ensure election of a tribal chairman who would have the Three Affiliated Tribes pressure the BIA to approve the leases. Appellants also allege that the BIA did not deny approval of or renegotiate a single lease on behalf of Fort Berthold allottees, thereby breaching its fiduciary duty to maximize the value obtained by Indian allottees and to ensure the leases were in their best interests.

Appellants filed this class action on November 26, 2012, alleging North Dakota common law claims of aiding and abetting, tortious inducement, and conspiracy to aid and abet breaches of fiduciary duty imposed by federal law. They also raised

claims for constructive trusts and an accounting. Each claim other than the accounting claim alleges as an element that the United States breached its fiduciary duty to the Indian plaintiffs and that the defendants knew of, encouraged, or wrongfully profited from that breach. The complaint named as defendants Dakota-3, Dakota-3 E&P Co., Dakota-3 Energy, Zenergy, Inc., and Zenergy Properties 6 Ft. Berthold Allottee and Spencer Wilkinson Jr., Rick Woodward, and Robert Zinke (who are alleged to be affiliated with, or owners of, the Dakota-3 and Zenergy companies). It also named the John Doe defendant who was alleged to have provided funding for the scheme. It alleges that defendants ultimately leased roughly 85,000 acres of land, bundled the leases together for sale, and then sold the leases in 2010 to a third party for $925 million. It claims that while defendants received over $10,000 per acre from their own sale, they paid some putative class members lease bonuses of only $200 per acre or less. In this action allottees seek to recover from the lessees' profits.

On February 1, 2013, appellants filed a separate complaint in the United States Court of Federal Claims, in which they sought monetary damages from the United States for alleged breaches of fiduciary duty that occurred when the BIA approved the leases at issue here. While that case was pending, defendants in the federal district court filed a Rule 12(b)(7) motion to dismiss this case for failure to join the United States as a required party under Federal Rule of Civil Procedure 19, in addition to other motions to dismiss under Rule 12. The United States filed an amicus brief that argued it was a required party which could not be joined and that the case should be dismissed. On November 26, 2013, the district court granted a Rule 12(b)(7) dismissal for failure to join the United States after concluding that the United States had an interest in the litigation and that the case could not go forward without it. The other motions to dismiss were denied as moot. Appellants now appeal from the district court's dismissal of their claims.

-4-

Subsequent to oral argument in our court, the federal claims court issued a February 6, 2015 decision in Two Shields v. United States, 119 Fed. Cl. 762, 788 (Fed. Cl. 2015), which granted summary judgment to the United States. In that decision the court concluded that the claims plaintiffs raised had been included in a class action settlement reached in earlier litigation. Id. at 778; see Cobell v. Salazar, 679 F.3d 909, 912 (D.C. Cir. 2012) (affirming district court approval of class settlement agreement). Its February decision in Two Shields is currently on appeal, but supplemental briefing from the parties before our court has been received addressing the question of any potential relevance here.

## II.

The federal district court determined that the United States is a required party in this case which cannot be joined and that dismissal is therefore required under Rule 19. Fed. R. Civ. P. 19. Rule 19(a) defines "[r]equired party," and Rule 19(b) provides factors to consider to determine whether dismissal is required when joinder of such a party cannot feasibly be accomplished. See id.

## A.

Rule 19(a)(1) provides that a party is required to be joined if feasible if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or
(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). We review de novo conclusions of law underlying a district court's Rule 19(a) determination, Gwartz v. Jefferson Mem'l Hosp. Ass'n, 23 F.3d 1426, 1428 (8th Cir. 1994).

An amicus brief filed by the United States in the district court claimed numerous interests relating to the subject matter of this action. These interests include defense of the leasing decisions by the BIA and the Secretary of the Interior, the correct interpretation and application of oil and gas leasing statutes and regulations, and ensuring that Indian lessees are not subject to competing obligations. The United States points out that the Secretary of the Interior has administrative authority over the leases which appellants claim have been unlawfully approved and would be free to continue to demand payment on them even if they were determined unlawful by a federal court in an action to which the United States is not a party.

The district court noted that in order to prevail on their claims of aiding and abetting or inducing a breach of fiduciary duty, lessors necessarily would have to prove that the United States has acted illegally and breached its fiduciary duty in approving the leases. The court concluded that the federal interests in administering the leases and overseeing the grant of new leases would be affected by such a finding and thus the United States is a required party. Appellants argue that the district court erred because the only relief they seek is to recover monetary damages from appellees for their having caused the United States to breach its fiduciary duty.

Our earlier decision in Nichols v. Rysavy, 809 F.2d 1317 (8th Cir. 1987) is instructive on the potential interests of the United States. In Nichols, we dismissed Indian allottee claims under Rule 19 for failure to join the United States. Id. at 1320. The allottees there were descendants of Indians who had been given "forced fee patents" on land which had been removed from trust status and titled to their ancestors, without regard for whether their ancestors requested that action. Id. at 1321– 22. Such land had previously been held in trust by the United States in order

to protect the Indians from attempts by others to cheat them of their newly acquired property.  Id. at 1321.  After receiving their forced fee patents, the ancestors of the Nichols plaintiffs lost or transferred title to their land.  Id. at 1323.  The federal policy to grant forced fee patents was later abandoned, and the Nichols descendants subsequently sued the United States, the state of South Dakota, one of its counties, and private parties who had obtained the formerly allotted lands.  Id. at 1320, 1323.  In that action the decedents sought return of possession, return of the allotted lands to trust status, and damages.  Id. at 1320.

Our court concluded that the Nichols claims against the United States were time barred because the statute of limitations had run.  809 F.2d at 1331.  After the United States was dismissed, we undertook a Rule 19 analysis and concluded that the case could not go forward without that party.  Id. at 1334.  We explained that "[t]he United States, as the allotting agent, is the appropriate defendant in suits involving the right to an allotment." Id. at 1333 (internal quotation marks omitted).  We noted that the presence of the United States was necessary in part because any ruling declaring that the forced fee patents were granted illegally could require taking back title to the land in trust.  Id.  We quoted with approval the district court's reasoning that the plaintiffs' "claims have far reaching social, economic, and political ramifications . . . .  Title to millions of acres of land is clouded, thus affecting real estate transactions, probate proceedings, and credit availability."  Id.  We also observed that

> the result of this suit, on the merits, would depend entirely on whether the United States acted legally or illegally in granting fee patents . . . .  If the United States issued the patents legally, then appellants' action is groundless.  In short the government's liability cannot be tried behind its back.

Id. (internal quotation marks omitted). Similarly in the case now before our court, the question of whether the United States has acted illegally in approving the oil and gas leases for plaintiffs' allotments "cannot be tried behind its back." See id.

Appellants seek to distinguish Nichols because the allottees in that case had sought return of lands to trust status, which would have required the government to take title to the land, see 809 F.2d at 1333, while only damages are sought here. Nevertheless, the Nichols plaintiffs had also argued "that complete relief [wa]s available without the United States, for the land could be returned to the allottees and damages paid." Id. at 1331. The Nichols court could have avoided the plaintiffs' request that the United States return their allotments to trust status by remanding for the district court to consider whether the lands had been illegally transferred under the forced fee patent procedure. If they had been, the court could have ordered damages paid to the allottee descendants for wrongful possession. Of course, any potential determination about the legality of prior actions by the United States would not have been binding since it was not a party in Nichols. See Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 122 (1968) ("[T]here can be no binding adjudication of a person's rights in the absence of that person."). We dismissed the case after determining it could not proceed without the presence of the United States.

Similarly, any finding that the United States has breached its fiduciary duty here would implicate interests similar to those which required dismissal in Nichols. Without the participation of the United States, any determination that particular lands had been illegally titled would potentially cloud the validity of many of the land grants approved by the government. See 809 F.2d at 1333. Appellants argue that the United States cannot be indispensable simply because its conduct is at issue, citing Edmondson v. State of Neb. ex rel. Meyer, 383 F.2d 123, 127 (8th Cir. 1967) (injury to a third party's reputation alone is insufficient to confer upon it a mandatory right to intervention under Rule 24). The potentially far reaching effects of any decision absent governmental participation show how different the interests of the United

States are from those of a typical third party which claims no interest beyond contesting allegations about its own improper conduct.

Other courts have recognized that the United States has an interest even without being joined in actions which "indirectly attack" its administrative decisions. Boles v. Greeneville Hous. Auth., 468 F.2d 476, 479 (6th Cir. 1972). For example, the Boles plaintiffs challenged an urban renewal plan approved by the Department of Housing and Urban Development (HUD) in an action against a local governmental entity. Id. at 477. Although Rule 19 was not addressed in the district court, the Sixth Circuit concluded that HUD was arguably indispensable and was "most hesitant to set the precedent of allowing the policies and practices of HUD or any other federal agency to be overhauled by the judiciary without at least affording the agency the opportunity to be heard in support of its present operation." Id. at 479. This reasoning is helpful in the case before our court, and we conclude that the United States is a required party which must be joined under Rule 19(a) if feasible.

Appellants object that the United States cannot be a required party under Rule 19 because it is a joint tortfeasor and the rule never applies to such a party. In support they cite a different principle of law—that "it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." Temple v. Synthes Corp., Ltd., 498 U.S. 5, 7 (1990). In Temple, the Court cited the Advisory Committee Notes to Rule 19 which indicate "a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability." Id. (quoting Fed. R. Civ. P. 19 advisory committee's note to 1966 amendment). To be sure, the United States does not claim in this action "the usual" joint and several liability nor "like liability" with that of the appellees. Instead, it claims an interest in the administration, enforcement, and interpretation of its laws and regulations. Temple did not establish that Rule 19 lacks application to all who are alleged to share liability for a wrong. Instead, the rule instructs courts to examine the interests of an absent

party in an effort to determine whether "as a practical matter" its ability to protect those interests will be hindered. Fed. R. Civ. P. 19(a)(1)(B)(i).

An illustrative case in which an absent joint tortfeasor was necessarily implicated is Laker Airways, Inc. v. British Airways, PLC, 182 F.3d 843 (11th Cir. 1999). There, Laker had sued British Airways (BA), for conspiring with Airport Coordination Ltd (ACL) to reserve preferential take off and landing slots in British airports. Id. at 845. Alleged conspirator ACL was a private English corporation appointed by the government to oversee allocation of airport time slots, a task which had been assumed by the United Kingdom under international transatlantic treaties. Id. at 845–46. The Eleventh Circuit concluded that ACL was a required party whose interests were "more significant than those of a routine joint tortfeasor." Id. at 847–48. It reasoned that a joint tortfeasor is a necessary party if it "emerges as an active participant in the allegations made in the complaint that are critical to the disposition of the important issues in the litigation." Id. at 848 (internal quotation marks omitted). Similar to the allottee appellants here, Laker argued that ACL's interests were not implicated because it sought only monetary damages from BA for its conspiratorial conduct and no relief from ACL. Id. at 849. Although the requested relief might not have directly implicated ACL, the court reasoned that Laker's claims necessarily required an evaluation of ACL's actions, "thereby substantially implicating ACL's interests." Id. at 848.

Like the court in Laker Airways, we reject an interpretation of the Supreme Court's Temple decision that would categorically bar consideration of interests a joint tortfeasor may have beyond those of joint and several liability. To prevail here, Two Shields and Defender Wilson must prove that the United States breached its fiduciary duty to ensure that the mining leases they signed were in the best interests of the Indians. For the reasons previously stated the United States has an interest in that determination, and its ability to protect its interest would be impaired or impeded by

its absence.  We therefore conclude that the United States is a required party which should be joined if feasible under Rule 19(a).

B.

Since the United States has not waived sovereign immunity, it cannot be joined in this action, and we review the district court's Rule 19(b) decision to dismiss for failure to join an indispensable party under a deferential abuse of discretion standard. Spirit Lake Tribe v. North Dakota, 262 F.3d 732, 746 (8th Cir. 2001).  Once a party is determined to be required, Rule 19(b) provides four factors that courts are to consider in deciding "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b). These factors are:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
> > (A) protective provisions in the judgment;
> > (B) shaping the relief; or
> > (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Id.

The Rule 19 inquiry is a context sensitive one which may vary from case to case.  See Patterson, 390 U.S. at 118–19.  In the specific context of an immune sovereign entity that is a required party not amenable to suit, the Supreme Court has explained that the action must be dismissed if the claims of sovereign immunity are not

frivolous and "there is a potential for injury to the interests of the absent sovereign." Republic of the Philippines v. Pimentel., 553 U.S. 851, 867 (2008).

The holding of the Supreme Court in Pimentel might appear to diminish the significance of the other Rule 19(b) factors in a case such as this, but our consideration of those factors at this stage leads to the conclusion that the district court did not abuse its discretion by its decision to dismiss. Although appellants argue that dismissal would deprive them of any remedy against the lessees, the Supreme Court has recognized that a defending party has an interest in avoiding "sole responsibility for a liability he shares with another." Patterson, 390 U.S. at 110. We consider this interest to be particularly strong here, where the wrongful conduct the appellee lessees are alleged to have committed was inducing the United States to breach its fiduciary duty to ensure that all leases are in the Indians' best interest; all liability is therefore contingent upon evaluation of the actions of the United States.

Of significance is the fact that this is not the only action appellant allottees have brought relating to the approval of the oil and gas lease agreements they made with appellees. They also brought a damage action against the United States in the Court of Federal Claims. That court has now granted summary judgment[2] to the United States after determining that appellants' lease claims had been addressed in a settlement agreement with the government which was affirmed in Cobell v. Salazar, 679 F.3d 909 (D.C. Cir 2012). Two Shields v. United States, 119 Fed. Cl. at 788. Although the claims court decision in Two Shields is currently on appeal, it appears appellants will have had an adequate alternate remedy regardless of its outcome. Should they prevail there and summary judgment be reversed, they might proceed to trial against the United States for their alleged breach of fiduciary duty damages. If

---

[2]Since judgment has been entered in that case, we need not reach the appellants' argument that the district court should have coordinated the instant action with that filed in the claims court.

the claims court decision is affirmed, their relief will appropriately be limited to the terms of the <u>Cobell</u> settlement agreement which the court found applicable to their claims.

Appellants argue that the United States would suffer no prejudice from its absence in the case since they claim appellees have similar interests to it and the incentive to make "every argument on the merits that the absent [United States] would or could make." <u>Henne v. Wright</u>, 904 F.2d 1208, 1212 n.4 (8th Cir. 1990). If a defendant cannot be expected "to articulate the government's position on its behalf in its absence," however, the "prejudice to the government is obvious." <u>Spirit Lake Tribe</u>, 262 F.3d at 746. Appellants' claim that the government's interests will be adequately protected by the defendant lessees does not withstand scrutiny. While one potential defense for the lessees would be the argument that no fiduciary duty was owed or breached, they are alleged to be coconspirators with the United States and therefore have strong incentives to characterize any breach as resulting solely from the government's independent action and judgment.

Two Shields and Defender Wilson assert that any prejudice to the interest of the United States is lessened because it remains free to intervene under Rule 24(b)(2). Rule 19(b) requires a court to examine whether a case can proceed "in equity and good conscience" if joinder is not feasible, Fed. R. Civ. P. 19(b), but it does not address the hypothetical intervention of an immune party which is not subject to joinder. The United States enjoys sovereign immunity for appellants' claims and can decide itself when and where it wants to intervene.

III.

In sum, we conclude that the district court was well within its discretion to dismiss this case after careful analysis of the Rule 19 factors, the interests of the

parties, and the interests and sovereign immunity of the United States. The judgment of the district court is therefore affirmed.

_____