**EEE MINERALS, LLC, et al., Plaintiffs,**

v.

**STATE of North Dakota, et al., Defendants.**

**Case No. 1:16–cv–115**

United States District Court, D. North Dakota.

Signed 10/03/2016

---

Joshua A. Swanson, H. Patrick Weir, Jr., Robert G. Manly, Robert B. Stock, Vogel Law Firm (Fargo), Fargo, ND, for Plaintiffs.

Hope L. Hogan, Jennifer L. Verleger, Matthew A. Sagsveen, Attorney General'S Office, Lawrence Bender, Michael D. Schoepf, Fredrikson & Byron, PA (Bismarck), Paul Jonathan Forster, John W. Morrison, Jr., Wade C. Mann, Crowley Fleck PLLP (Bismarck), Lyle W. Kirmis, Zuger Kirmis & Smith, Jannelle R. S. Combs, Combs Law Office, James W. Martens, Martens PLLC, Ramona E. Garcia, Robin Wade Forward, Aaron K. Friess, Bismarck, ND, Paul R. Franke, III, Charles Greenhouse, Moye White LLP, Michael Kevin Cross, Karen L. Spaulding, Malinda Morain, William E. Sparks, Beatty & Wozniak, P.C., Anthony J. Shaheen, Holland & Hart, LLP, Denver, CO, Nathan T. Nieman, Lynn H. Slade, Modrall Sperling Roehl Harris & Sisk P.A., Albuquerque, NM, David A. Higbee, John E. Beerbower, Hunton & Williams LLP, Washington, DC, Michael D. McNair, McNair Larson & Carlson Ltd, Fargo, ND, Michael E. Zimmerman, Michael E. Zimmerman, P.C., Sheridan, WY, Michael J. Mazzone, Haynes and Boone, LLP, Houston, TX, Matthew J. Salzman, Kansas City, MO, Dean A. Frantsvog, Frantsvog Law, PC, Minot, ND, Andrew Shedlock, Kutak Rock LLP, Omaha, NE, Christopher P. Parrington, Kutak Rock LLP, Minneapolis, MN, for Defendants.

Donald W. Hecker, Sugar Land, TX, pro se.

Alan B. Nicol, Arvada, CO, pro se.

## ORDER GRANTING THE DEFENDANTS' MOTIONS TO DISMISS

Daniel L. Hovland, District Judge

## I. BACKGROUND

This action was originally filed in 2014, in the state District Court of McKenzie County, North Dakota. The lawsuit was commenced in an effort to determine who owns title to oil and gas interests under and adjacent to the Missouri River in four townships in western North Dakota. The original action included two named Plaintiffs, and named as Defendants the State of North Dakota, the Board of University and School Lands of the State of North Dakota, and Continental Resources, Inc. Continental Resources moved to dismiss the complaint for failure to join necessary and indispensable parties. The state court allowed limited discovery and provided the Plaintiffs an opportunity to move to amend their complaint. The current amended complaint was filed in state court on or about April 15, 2016. It expanded the lands defined as "Class Property" to essentially include the whole of the Missouri River from the Montana–North Dakota border to the Fort Berthold Indian Reservation near New Town, North Dakota.

The case was removed to federal court on May 13, 2016. See Docket No. 1. There have been a multitude of motions to dismiss filed by more than 100 Defendants beginning in June of 2016. See Docket Nos. 72, 94–96, 107, 122, 127, 130, 132–185, 188, 191, 199, 202, 222, 233, 239, 278, and 280. The primary basis for the motions to dismiss is the failure to join the United States as a necessary party.

## A. THE LANDS AND PARTIES

The lands included in this lawsuit are tracts immediately adjacent to the Missouri River as well as many tracts of land miles from the water. The Plaintiffs define the

"Class Property" as all or parts of 27 different townships through which the Missouri River runs. A "township" consists of a six-mile by six-mile area subdivided into 36 "sections" of one square mile (640 acres) each. See N. Oil and Gas, Inc. v. Moen, 808 F.3d 373, 375 (8th Cir. 2015). A township includes 36 square miles of land, or 23,040 acres. The Plaintiffs' definition of "Class Property" is not limited to lands immediately adjacent to the water, and generally includes entire townships.

The amended complaint reveals the Plaintiffs claim an interest in only a small subset of the lands they define as the "Class Property." The Plaintiffs claim to own an interest in all or parts of just five sections of land within the area defined as the "Class Property." The State of North Dakota claims an interest in the riverbed of the Missouri River across the "Class Property." Concerning the river, the State's ownership of the riverbed is defined by the river's "ordinary high water mark." The Plaintiffs dispute the location of the ordinary high water mark as delineated by the Board of University School Lands of the State of North Dakota ("Land Board"). See Docket No. 5–24, ¶ 51–70. The Plaintiffs also take issue with the State's claim that the ordinary high water mark extends to the current shores of the Lake Sakakawea reservoir, as opposed to the historic riverbed before inundation due to the Garrison Dam.

The Plaintiffs are claiming they have been deprived of their oil and gas interests by virtue of the State of North Dakota claiming ownership to all of the oil and gas under Lake Sakakawea as sovereign land under the Equal Footing Doctrine. The State contends it owns all of the oil and gas under Lake Sakakawea because North Dakota's title to the beds of navigable waters extends up to the ordinary high water mark. In other words, State title follows the waterline.

With respect to the non-state Defendants, they are alleged to be "the holders of oil and gas leases from the State" within the "Class Property" area. See Docket No. 5–24, ¶¶ 16–45. The amended complaint attempts to identify all parties with working interests in leases with the State in each of the respective townships included in the "Class Property."

The amended complaint also lists each of the State of North Dakota oil and gas leases claimed to be adverse to the named Plaintiffs' interests. See Docket No. 5–24, ¶¶ 59–60. The Plaintiffs claim the Defendants owning State leases adverse to their individual interests are: Continental Resources, Inc.; Statoil Oil & Gas LP; and Hess Bakken Investments II, LLC.

## B. THE AMENDED COMPLAINT

The amended complaint asserts eight individual counts. See Docket No. 5–24. Count I sets forth quiet title claims upon which the Plaintiffs' remaining claims depend. It is styled a "Request for Declaratory Relief" against all Defendants. This is a request for the Court to delineate and quiet title in relation to the ordinary high water mark of the Missouri River within the area defined as the "Class Property." Count I requests "a declaration by the Court that the State of North Dakota does not own title to the mineral interests owned by the Plaintiffs and the Class, such property located above the [ordinary high water mark] as the [ordinary high water mark] existed for the historical Missouri River at that point in time before the construction of Garrison Dam and subsequent filling of the Lake Sakakawea Reservoir." See Docket No. 5–24, ¶ 85. The prayer for relief requests that "title to the mineral interests in the McKenzie County, Mountrail County, and Williams County property identified herein be forever quieted in Plaintiffs and the Class, and that Defendants be forever barred and enjoined from further asserting claims against this property." See Docket No. 5–24, ¶ 125.

Counts II through VI set forth various theories for monetary relief based on the theory that the State of North Dakota has improperly leased and collected royalties on minerals that will be quieted in the Plaintiffs and the proposed class under Count I. Counts II and III assert takings claims against the State of North Dakota under the state and federal constitutions. Count IV asserts conversion claims against all Defendants. Count V asserts constructive trust and unjust enrichment claims against all Defendants. Count VI alleges conspiracy claims

against all Defendants, alleging the Defendants conspired to effect wrongful takings or deprivations of the Plaintiffs' and class members' minerals. A second "Count VI" asserts a claim against the State of North Dakota under 42 U.S.C. § 1983, premised on a wrongful taking under the Fifth Amendment of the United States Constitution.

Finally, Count VII requests injunctive relief during the pendency of the case. Pending a ruling on the proper delineation of the ordinary high water mark within the boundaries of the Garrison Dam Project, the Plaintiffs seek a court-ordered deposit of "all proceeds related to any and all oil and gas produced from the property, including but not limited to bonus payments, royalty payments, delinquency penalties, and other fees and costs associated with the mineral interests" described in the amended complaint. See Docket No. 5–24, ¶ 119.

The Plaintiffs seek both declaratory relief and damages for themselves and a putative class. The "Class" is defined as:

[A]ll individuals who own the mineral interests in the Class Property, above the Ordinary High Water Mark ("OHWM") as the OHWM existed for the Missouri River before the construction of Garrison Dam and filling of Lake Sakakawea reservoir, that have been wrongfully deprived of their mineral interests by the Defendants as a result of the Defendants' claims to the Class Property, and, also, the Defendants' wrongful taking and conversion of such mineral interest as described herein, but excluding from such class, the defendants, any and all officers, directors, employees, and agents of the defendants, their affiliates, and/or subsidiaries who are or have been employed by defendants.

See Docket No. 5–24, ¶ 3. The amended complaint states that the following parties are excluded from the class: the federal government, the Court, and any members of the Court's immediate family. See Docket No. 5–24, ¶ 75.

## C. FEDERAL OWNERSHIP

It is undisputed the federal government owns significant oil, gas, and other mineral interests in and under the lands that are the subject of this lawsuit. See Affidavit of David Mackie, Docket No. 129. Filed with the Defendants' motions are "OG Plats" maintained by the federal Bureau of Land Management ("BLM"). The purpose of the "OG Plats" are to depict the numerous tracts in which the United States owns the oil, gas, and other minerals and has leased oil and gas interests. See Docket Nos. 74–1 through 74–6. The exhibits submitted by the Defendants depict federal mineral tracts in yellow which are oil and gas interests of the United States. The exhibits, and the ownership interests of the federal government, have not been challenged by the Plaintiffs in their responses to the motions to dismiss.

The record reveals the federal government has leased many of the depicted oil and gas interests to third parties as evidenced by references to federal leases on the OG Plats. Each federal lease is assigned a serial number; and serial numbers for federal leases covering minerals located in North Dakota generally begin with the prefix NDM followed by a sequence of numbers. For the leased tracts, the OG Plats denote "OG Lse" for "Oil and Gas Lease."

Serial register pages are maintained by the BLM and provide general lease information for each federal lease, such as the lessee(s) and the lands covered. See generally Bureau of Land Management, Land & Mineral Legacy Rehost 2000 System–LR2000, http://www.blm.gov/lr2000. The Defendants' motions also reveal "Serial Register Pages" for seven federal oil and gas leases. These example Serial Register Pages describe federal leases which purport to cover interests located within sections of land in which the named Plaintiffs also individually claim interests in paragraphs 9–13 of the amended complaint. The federal lease serial numbers and the pertinent lands covered by the leases are highlighted in yellow.

Finally, the unrefuted affidavit of David Mackie, Senior Division Order Analyst for Continental Resources, Inc., states in relevant part as follows:

1. I am a Senior Division Order Analyst for Defendant Continental Resources, Inc. ("Continental"), and in that capacity I have gained personal knowledge of Con-

tinental's system for identifying the owners of the oil and gas rights in and under particular spacing units and ensuring they are paid appropriately when oil and/or gas is produced and sold. I am also familiar with the Plaintiffs' allegations in the above-captioned lawsuit.

2. Continental operates oil and gas wells and owns oil and gas leases within the area defined by the First Amended Complaint as the "Class Property." In some cases, Continental owns leases and/or operates wells in spacing units where the federal government claims interests in the oil and gas in and under property that is also claimed by private minerals owners or the State of North Dakota.

3. Attached hereto and marked as Exhibit 1 is a federal plat maintained by the Bureau of Land Management ("BLM") that has been marked to show competing parties' claims regarding the mineral ownership under those lands. Exhibit 1–A is a detail of a portion of the same plat. Private leasehold interests are shown in blue. Federal leasehold interests are shown in Yellow.

4. As the plat shows, in many cases federal leasehold claims overlap with private leasehold claims. In addition, there are several instances where the federal claims are located in the middle of the Missouri River, which is claimed by the State of North Dakota. Thus, in Township 153, Range 98 West, which is included within Plaintiffs' definition of "Class Property," the United States is claiming to own mineral interests that are also claimed by both the State of North Dakota and private mineral owners.

\* \* \*

8. The plat shows another instance in which federal leasehold claims overlap with private leasehold claims and minerals claimed by the State of North Dakota. In Sections 21, 22, and 23, Township 153, Range 98 West, which is included within Plaintiffs' definition of "Class Property," the Missouri River has moved south from its original loca-tion, completely submerging the interest claimed by the United States. Some of those lands are still submerged and thus claimed by the State of North Dakota. Some of those lands have re-emerged on the north side of the River as accretions, which are now claimed by the private land owners on the north side of the river. Thus, in Sections 21, 22, and 23, the United States is claiming to own mineral interests that are also claimed by both the State of North Dakota and private mineral owners.

\* \* \*

12. The plat shows another instance in which federal leasehold claims overlap with private leasehold claims and minerals claimed by the State of North Dakota. In Sections 31 and 32, Township 154, Range 95 West, which is included within Plaintiffs' definition of "Class Property," the Missouri River has moved, resulting in additional instances where the United States is claiming to own mineral interests that are also claimed by both the State of North Dakota and private mineral owners.

See Docket Nos. 129, 129–1, 129–2, 129–3, and 129–4.

The Court notes that neither the affidavit of David Mackie, nor any of the other exhibits submitted by the Defendants which reveal the federal government's ownership interests in the oil and gas located within the "Class Property," have been challenged by the Plaintiffs. In other words, the federal government's interest in oil, gas, and other minerals located in and under the lands subject to this lawsuit is undisputed.

## II. STANDARD OF REVIEW

█ Federal Rule of Civil Procedure 12(b)(7) allows a defendant to seek dismissal of a case for failure to join a party under Federal Rule of Civil Procedure 19. In analyzing a Rule 12(b)(7) motion, courts are to accept as true all the well-pleaded factual allegations and draw all reasonable inferences in favor of the non-moving party. 5C Wright & Miller, Federal Practice and Pro-

cedure § 1359 (3d ed. 2004). The Court is not limited to the pleadings in its consideration of a Rule 12(b)(7) motion. Dismissal is appropriate under Rule 19 if the moving party demonstrates: (1) an absent and required party should be joined; (2) the court cannot join the absent, required party; and (3) the case cannot proceed "in equity or good conscience" without the absent, required party. See Fed. R. Civ. P. 19(b).

## III. LEGAL ANALYSIS

The Defendants contend the action must be dismissed because the United States is a required party under Rule 19(a), and an indispensable party that cannot be joined under Rule 19(b). The Defendants further contend that if the case proceeds without the United States as a named defendant, the case will unfairly litigate claims against the federal government without its participation.

### A. RULE 19

■ Rule 19 of the Federal Rules of Civil Procedure mandates that the court conduct a two-part inquiry when determining whether an action should be dismissed for failure to join an indispensable party. Initially, the court must determine whether the absent person's presence is "required." Fed. R. Civ. P. 19(a). An absent person's presence is "required" in two instances. The first is when complete relief cannot be accorded among the existing parties because of the absent person. Fed. R. Civ. P. 19(a)(1)(A). The second is when the absent person claims an interest in the subject of the action that is of such a character that disposing of the action would either impair or impede that person's ability to protect their interest as a practical matter, or would leave an existing party in substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the absent person's interest. Fed. R Civ. P. 19(a)(1)(B)(i) and (ii). If the presence of an absent person is "required," the court must order that the person be joined if feasible. Fed. R. Civ. P. 19(a)(2). If the absent "required party" cannot be joined, the court must proceed to the second step of its inquiry and determine "whether, in equity and good conscience, the action should proceed

among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b); Pembina Treaty Comm. v. Lujan, 980 F.2d 543, 545 (8th Cir. 1992). When the federal government cannot be joined due to principals of sovereign immunity, "the action must be dismissed if the claims of sovereign immunity are not frivolous and 'there is a potential for injury to the interests of the absent sovereign.'" Two Shields v. Wilkinson, 790 F.3d 791, 798 (8th Cir. 2015), cert. denied, —— U.S. ——, 136 S.Ct. 695, 193 L.Ed.2d 521 (2015).

■ Rule 19 sets forth four factors to be considered by the court in exercising its discretion to dismiss a case for non-joinder: (1) "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;" (2) "the extent to which any prejudice could be lessened or avoided" by carefully crafting the judgment; (3) "whether a judgment rendered in the person's absence would be adequate;" and (4) "whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder." Fed. R. Civ. P. 19(b). In addition, four key interests must be kept in mind: (1) the plaintiff's interest in having a forum; (2) the defendant's interest in avoiding multiple litigation, inconsistent relief, or sole responsibility for a liability shared with another; (3) the interests of the absent party; and (4) the interest of the courts and the public in complete, consistent, and efficient settlement of controversies. Nichols v. Rysavy, 809 F.2d 1317, 1332 (8th Cir. 1987). In making the joinder determination under Rule 19(b) the court must undertake a practical examination of the circumstances and avoid a inflexible formulistic approach. Whether a party is indispensable can only be determined in the context of the particular litigation. Spirit Lake Tribe v. North Dakota, 262 F.3d 732, 746 (8th Cir. 2001).

### B. THE UNITED STATES IS A REQUIRED PARTY

This is a putative class action to quiet title to the ordinary high water mark of the Missouri River from the North Dakota–Montana border to the Fort Berthold Indian Reservation. The Plaintiffs have framed the issue as

a declaratory judgment claim under N.D.C.C. ch. 32–23 *et seq.* and 28 U.S.C. § 2201 *et seq.* Chapter 32–23 of the North Dakota Century Code requires that "all persons who have or claim any interest that would be affected by the declaration must be made parties." N.D.C.C. § 32–23–11; see Wacker Oil, Inc. v. LoneTree Energy, Inc., 459 N.W.2d 381, 383 (N.D. 1990); Williams Co. v. Hamilton, 427 N.W.2d 822, 824 (N.D. 1988).

██ Under the federal declaratory judgment act, all persons who have an interest in the determination of questions raised in a declaratory judgment suit should be before the court. It is well-settled that "no decree can be entered affecting the title to property or cancelling any cloud thereon unless all of the parties interested in the title or in the particular cloud and who will be directly affected by any judgment that may be rendered are properly before the court." Ward v. Humble Oil & Ref. Co., 321 F.2d 775, 780 (5th Cir. 1963).

██ The Court finds, as a matter of law, that the United States is a required party because it owns significant oil, gas, and other mineral interests in and under the lands that are the subject of this lawsuit. The United States has leased many of its oil and gas interests to third parties and it owns an interest in the bonus and royalty payments arising from those federal leases. Any judgment establishing ownership of the disputed oil and gas estate will clearly have a significant impact on the United States' title and the related coverage of federal leases.

If the United States is not a party, any judgment issued cannot resolve—among the United States, the State of North Dakota, the Plaintiffs, and the hundreds of Defendants, and other unnamed parties—the issue of who actually holds superior title to the oil, gas, and other mineral interests in and under the subject lands, or the related federal leases. Without the United States, no state court or federal court can accord complete relief among the existing parties because title to the oil and gas in and under the subject lands will remain uncertain. Fed. R. Civ. P. 19(a)(1)(A). The lawsuit also fails to name the owners of interest in federal leases, as well

as others who claim an interest in the federal oil and gas leases or the production proceeds. The United States is clearly a required party under Fed. R. Civ. P. 19(a)(1)(A).

The United States is also a required party under Fed. R. Civ. P. 19(a)(1)(B)(i) and (ii). Under Rule 19(a)(1)(B)(i), the court examines whether the non-party's ability to protect its interest will be impaired or impeded if a judgment is rendered in its absence. Neither the Plaintiffs nor the multitude of Defendants "can be expected to articulate the government's position on its behalf in its absence." Spirit Lake, 262 F.3d at 746–47. It is apparent to the Court that a judgment rendered in this case would significantly impair the United States' interest by clouding its title before the federal government had the opportunity to raise any arguments on the merits. Id. at 746–47 (noting that the "district court could not possible craft an effective judgment" because "the government would not be bound by that judgment due to its non-joinder").

If the Court were to resolve this dispute in the absence of the United States (as well as the hundreds of other persons who may claim an interest in the federal oil and gas leases or who have an overriding royalty ownership interest), one or more of the Defendants would be improperly exposed to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. Fed. R. Civ. P. 19(a)(1)(B)(ii). The federal leases listed on the Serial Register Pages (see Docket No. 74–1 through 74–6) cover minerals located in and under the sections of land referenced by the named Plaintiffs in the amended complaint. See Docket No. 129 and attached exhibits. Because the United States would not be bound by the judgment, the United States could continue to insist that it is entitled to its calculation of royalties attributable to the disputed minerals and leases at issue even if this Court adopts a method of delineation that would suggest a different result.

██ The Court concludes that the United States is a required party who must be joined if feasible. Fed. R. Civ. P. 19(b). However, pursuant to the doctrine of sovereign

immunity, "the United States cannot be sued at all without the consent of Congress." Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands, 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983). A waiver of sovereign immunity must be "unequivocally expressed," and the "terms of [the United States] consent to be sued in any court define that court's jurisdiction to entertain the suit." Lehman v. Nakshian, 453 U.S. 156, 160, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981).

It would certainly be best for all involved if the United States was a party to the action and available to fully explain and defend its actions, and protect its ownership interest. Since the United States has a significant interest in the action and cannot be joined, the question becomes whether the case may proceed in the absence of the United States as a party. To answer this question, the Court turns to an analysis of Rule 19(b) of the Federal Rules of Civil Procedure.

## C. RULE 19(b)

■ Under Rule 19(b), the Court must undertake a practical examination of the circumstances of the case and determine whether "in equity and good conscience" the action should proceed among the existing parties or whether it should be dismissed. Two Shields, 790 F.3d at 797; Fetzer v. Cities Serv. Oil Co., 572 F.2d 1250, 1253 (8th Cir. 1978).

Rule 19(b) requires the Court to consider the following factors:

(1) The extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

■ The first factor requires consideration of whether a judgment rendered in the person's absence would prejudice the person or the other parties. In other words, the interests of the absent party (the United States) must be considered. In cases involving the intersection of sovereign immunity and an absent government entity, the application of Rule 19 involves a "heavy emphasis" on protecting the governmental interest. 7 Wright & Miller, Federal Practice and Procedure, § 1617 (3d ed. 2001); Wichita and Affiliated Tribes of Okla. v. Hodel, 788 F.2d 765, 777 n. 13 (D.C. Cir. 1986). The United States Supreme Court has stressed that in any Rule 19(b) analysis where immunity is asserted, and the sovereign's interest is not frivolous, dismissal is required where there is a potential for injury to that governmental interest. Republic of the Philippines v. Pimentel, 553 U.S. 851, 867, 128 S.Ct. 2180, 171 L.Ed.2d 131 (2008) (citing cases analyzing the intersection of joinder and the sovereign immunity of the United States); Two Shields, 790 F.3d at 798.

The United States has not consented to be sued under either N.D.C.C. § 32–23 or 28 U.S.C. § 2201, nor under any of the substantive claims asserted in the amended complaint. It is not feasible to join the United States as a party to the Plaintiffs' claims as pled. Since the United States has not waived sovereign immunity, it cannot be joined in this lawsuit. Two Shields, 790 F.3d at 797. Under the federal Quiet Title Act, the sovereign immunity of the United States may be waived with respect to civil actions "to adjudicate a disputed title to real property in which the United States claims an interest." 28 U.S.C. § 2409a(a). However, the Plaintiffs have not asserted such a claim in this lawsuit. The limited scope of the act and affirmative defenses such as the 12–year statute of limitations under the act likely impacted that decision. When a required party cannot be feasibly joined, the Court "must determine whether, in equity and good conscience, the action should proceed among the existing

parties or should be dismissed." Fed. R. Civ. P. 19(b). If the case cannot proceed "in equity and good conscience" without a required party, Rule 19(b) requires dismissal.

Other federal courts have noted that a sovereign's interest may outweigh any other Rule 19(b) factor. Enter. Mgmt. Consultants, Inc. v. United States, ex rel. Hodel, 883 F.2d 890, 894 (10th Cir. 1989); Fluent v. Salamanca Indian Lease Auth., 928 F.2d 542, 548 (2nd Cir. 1991) (recognizing the "paramount importance accorded the doctrine of sovereign immunity under [r]ule 19"); United States ex rel. Hall v. Tribal Dev. Corp., 100 F.3d 476, 480–81 (7th Cir. 1996) (explaining that a plaintiff's inability to seek relief should not weigh heavily against dismissal when that inability results from the absent party's exercise of its right to sovereign immunity).

In this case, a claim of sovereign immunity by the United States would not be frivolous. The Plaintiffs' causes of action do not authorize a lawsuit against the federal government, and the United States has not waived sovereign immunity. The Court believes there is a real potential for injury to the interests of the United States if the federal government is not a party to this dispute.

The United States will face substantial prejudice if this action proceeds. Fed. R. Civ. P. 19(b)(1); Spirit Lake, 262 F.3d at 746–47 (stating "prejudice to the government is obvious" when it is not named a party to an action in which it has an interest). It is virtually impossible to craft an effective judgment quieting title in favor of any party without adversely affecting the interests of the United States. Any judgment rendered would prejudice the United States because it would cloud the United States' title. Nichols, 809 F.2d at 1333 (dismissing case for failure to join the United States and noting judgment absent the United States would cloud title for the United States and other parties thereby affecting real estate transactions).

There are literally hundreds of named Defendants, and countless numbers of other persons who have an ownership interest in the lands at issue, who face significant prejudice if this lawsuit proceeds. Any judgment would not be binding on the United States. The United States, and those claiming an interest in the federal leases, may continue demanding royalty and other production payments inconsistent with the judgment. This would subject the Defendants to possible double liability. The United States would likely need to initiate separate proceedings to protect its interests in the property. A separate proceeding would also prejudice the Defendants because they would be required to incur costs to appear and subject themselves to the potential of double, multiple, and inconsistent obligations and liabilities. Any judgment rendered will clearly prejudice both the United States and the named Defendants. The first Rule 19(b) factor clearly favors dismissal.

The prejudice to the United States and the named Defendants cannot be lessened or avoided by protective provisions in the judgment, shaping relief, or other measures. Fed. R. Civ. P. 19(b)(2). The "court could not possibly craft an effective judgment" if the "government would not be bound by that judgment due to non-joinder." Spirit Lake, 262 F.3d at 746–47.

Recently, state court Judge Paul Jacobson was confronted with many of the same issues presented in this dispute. In Statoil Oil & Gas LP v. 1280 Royalties, LLC, et al., (District Court for Williams County, North Dakota), Judge Jacobson entered an "Order Granting Motion to Dismiss" on May 16, 2016. See Docket No. 74–8. The plaintiff sought to resolve ownership interests related to the location of the ordinary high water mark on the Missouri River. The land at issue in Statoil was Township 154 North, Range 100 West, Sections 30 and 31, the same tracts of land claimed by two of the named Plaintiffs in this lawsuit. See Docket No. 5–24, ¶ 13. The United States was not a named party in the state lawsuit. Judge Jacobson dismissed the case for failure to join the United States under Rule 19 of the North Dakota Rules of Civil Procedure. The state court expressly noted that, "[T]he [c]ourt cannot simply carve out the interest claimed by the United States from the judgment." See Docket No. 74–8, ¶ 10. With respect to the named Defendants, it is impossible to protect them from the potential for double payment, multiple litigation, liabilities,

obligations, and inconsistent relief if the federal government will not be bound. Fed. R. Civ. P. 19(b)(2).

There is virtually no way to shape a judgment in a way that will not offend principles of sovereign immunity. As Judge Jacobson observed in the *Statoil* decision, "[a]ny decision about the competing claims of the existing parties will necessarily reveal the Court's opinion with respect to the United States' property, even though it will not be binding on the United States." See Docket No. 74–8, ¶ 10. The Court finds that the second factor warrants dismissal because there is no way to shape relief or craft a judgment to reduce prejudice in this case.

Third, any judgment entered would be inadequate because it cannot effectively resolve the threshold issue of how the ordinary high water mark is to be delineated throughout the subject lands. Fed. R. Civ. P. 19(b)(3). Unless the United States is joined, no judgment can be adequate for all stakeholders, including the public's interest in settling all disputes and the interest of the United States in protecting its sovereignty. The third factor also favors dismissal.

The fourth equitable factor asks whether there is an alternative forum available that would provide an adequate remedy for the plaintiff. Fed. R. Civ. P. 19(b)(4). It is well-established that the principles of sovereign immunity generally trump the fourth factor. "[L]ack of an alternative forum does not automatically prevent dismissal of a suit. Sovereign immunity may leave a party with no forum for its claims." N. Arapaho Tribe v. Harnsberger, 697 F.3d 1272, 1284 (10th Cir. 2012).

This dispute concerns the issue of who owns the mineral interests under and adjacent to the Missouri River. It is primarily a question of state law for which there are arguably other available remedies and forums. Class members who own in an area where the United States does not claim an interest could file an action to quiet title in state court as well as pursue other statutory or common law claims. The Plaintiffs could pursue a claim under the federal Quiet Title Act of 28 U.S.C. § 2409a, subject to a number of defenses. The fourth Rule 19(b) factor also warrants dismissal.

In response to Continental Resource's motion to dismiss, the Plaintiffs did not address the issue of whether the United States was a necessary and indispensable party. See Docket No. 216. The Plaintiffs essentially argue they should be allowed to conduct discovery to determine the identity of all additional persons who may have an ownership interest in leases with the State. See Docket No. 216, pp. 9–14. With respect to the other Defendants' motions to dismiss, the Plaintiffs acknowledge they have failed to join necessary parties, including the United States and a number of overriding royalty interest owners and creditors who have an interest in the state leases. See Docket No. 203. However, rather than contest whether such parties are necessary, the Plaintiffs argue they should not be required to join other parties because it would either be too difficult to do so or because there are other options for adding additional parties to the case. The Plaintiffs assert it may be impossible to assert a claim against the United States under the federal Quiet Title Act. The Plaintiffs also argue the simple and immediately-available remedy for the Defendants is to join the United States by pursuing a third-party complaint under Rule 14 of the Federal Rules of Civil Procedure. See Docket No. 203, p. 4. The argument is that if a party can be joined under Rule 14, they are not indispensable.

The Plaintiffs suggest other Defendants can remedy the absence of the United States by simply joining the federal government as a third party. Rule 14 merely permits defendants to "serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). There is nothing in Rule 14 that requires any of the Defendants to add additional parties to remedy the Rule 19 defects that may exist. The same holds true with respect to the potentially hundreds of overriding royalty interest owners, and creditors with interests in the oil and gas leases from the State, who have not been made parties to the lawsuit. The Plaintiffs do not argue the lawsuit should continue without those mineral interest owners. Instead, the gist of the argument is the Defendants

should pursue a third-party claim against the United States; the Defendants should identify the other mineral interest owners so they can be added as parties at a later date; and/or that discovery should be allowed to enable the Plaintiffs to identify the potentially hundreds of other persons who should be joined as parties in the lawsuit. However, allowing additional discovery does not address the undisputed fact the United States is a necessary and indispensable party to this lawsuit. Simply stated, the federal government owns significant oil and gas interests in and under the land at issue in this lawsuit. No one, including the Plaintiffs, have challenged that critical and undisputed fact.

In summary, the Plaintiffs' complaint shall be dismissed for failure to join necessary parties, namely the United States. There are also countless numbers of overriding royalty interest owners and creditors who have an interest in State leases which are the subject of this lawsuit, and whom have not been named as parties. It is clear and undisputed the federal government owns significant oil, gas, and other mineral interests in and under the lands which are at the very heart of this lawsuit. Suffice it to say no court, whether a state court or a federal court, could craft an effective judgment and address the litany of claims and disputes that exist in this complex litigation, if the federal government is not bound by the judgment. There is no court that could ever craft a judgment and carve out the ownership interests of the federal government from the judgment and achieve a fair and just result. The United States is a required, necessary, and indispensable party to the litigation.

The Defendants' motions to dismiss are **GRANTED.** See Docket Nos. 72, 94–96, 107, 122, 127, 130, 132–185, 188, 191, 199, 202, 222, 233, 239, 278, and 280. Plaintiffs' motion for oral argument (Docket No. 235) is **DENIED.** Judgment shall be entered dismissing the Plaintiff's amended complaint without prejudice under Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**